IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MODERN FONT APPLICATIONS LLC,<br><br>              Plaintiff,<br><br>v.<br><br>PEAK RESTAURANT PARTNERS, LLC, *et al.*,<br><br>              Defendants, | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS<br><br>Case No. 2:19-CV-221 TS-DBP<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Dine Brand Global, Inc.'s ("Dine") Renewed Motion to Dismiss Plaintiff's Complaint for Improper Venue, or in the Alternative, to Transfer Venue. For the reasons discussed below, the Court will grant the Motion and dismiss for improper venue.

## I. BACKGROUND

Plaintiff Modern Font Applications LLC ("MFA") filed this action against Dine, Peak Restaurant Partners, LLC, and DOES 1-5 alleging that "Defendants' IHOP application for iOS devices infringes U.S. Patent No. 9,866,421 ("Patent 421"), titled "Allowing Operating System Access to Non-Standard Fonts in a Network Document."[1] Dine filed a Motion to Dismiss ("Motion") for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

---

[1] Docket No. 32, at 2.

Prior to ruling on the Motion, the Court granted limited venue discovery as "to whether [Dine] has a regular and established place within the District of Utah."[2] The parties finished discovery and submitted supplemental briefing. Thereafter, the Court ordered a second round of venue discovery. This time discovery was limited to a "deposition to obtain information regarding whether Dine and the IHOP subsidiaries keep separate tax returns, financial statements, books, and finances."[3] The parties conducted the deposition and have submitted supplemental briefs.

Dine is the parent company to the popular IHOP restaurant chain but denies having a regular and established place of business in Utah.[4] Instead, Dine asserts that its wholly owned subsidiary, IHOP, owns property and conducts business in Utah, but Dine and IHOP are distinct, separate entities.[5] MFA, on the other hand, asserts that Dine has a regular and established place of business in Utah because Dine and IHOP are so mixed and intertwined that, "for purposes of the venue analysis, they cannot be separated and must be considered together."[6]

## II. STANDARD OF REVIEW

In considering a motion to dismiss for improper venue, the Court generally applies the same standards for deciding a motion to dismiss for lack of personal jurisdiction.[7] Upon a defendant's venue challenge, a court accepts the uncontroverted allegations in the Plaintiff's

---

[2] *See* Docket No. 51.
[3] *See* Docket No. 108.
[4] *See* Docket No. 45, at 2.
[5] *See* Docket No. 61, at 1–2.
[6] Docket No. 65, at 4.
[7] *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1057–58 (D. Kan. 2006).

well-pled complaint as true and draws all reasonable inferences therefrom as true.[8] The Court, however, may examine facts outside the complaint to determine whether venue is proper.[9] The Court should also resolve all factual disputes in the plaintiff's favor.[10] In cases of patent venue disputes, Federal Circuit precedent controls.[11] The Federal Circuit has determined that "the plaintiff bears the burden of persuasion on the propriety of venue in patent cases."[12]

### III. DISCUSSION

In patent cases, the determination of proper venue is made under 28 U.S.C.A. § 1400(b).[13] Under Section 1400(b) venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." "[A] domestic corporation resides only in the State of incorporation for purposes of the venue statute."[14] Here, Dine is not incorporated in Utah so it does not reside in this district. Therefore, venue is only proper if Dine has a "regular and established place of business" within the district.

The Federal Circuit has established a three-prong test for determining whether a defendant has a regular and established place of business.[15] First, "there must be a physical place

---

[8] *See Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1260 (10th Cir. 2012).

[9] *See e.g.*, *id.*; *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998).

[10] *Monarch Normandy Square Partners v. Normandy Square Assoc. Ltd. P'ship*, 817 F. Supp. 896, 898 (D. Kan. 1993).

[11] *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

[12] *SNI Sols., Inc. v. Univar USA, Inc.*, No.: 4:18-cv-4090, 2019 WL 3306215 at *1 (C.D. Ill. July 23, 2019).

[13] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017).

[14] *Id.* at 1519.

[15] *In re Cray Inc.*, 871 F.3d at 1360.

in the district."[16] Second, the place "must be a regular and established place of business."[17] Third, the location must be "the place of the defendant."[18]

Under the first requirement, "the statute requires a 'place,' *i.e.*, a building or a part of a building set apart for any purpose or quarters of any kind from which business is conducted."[19] The statute does not require a "fixed physical presence in the sense of a formal office or store" but only "a physical, geographical location in the district from which the business of the defendant is carried out."[20]

Under the second requirement, the defendant must have a regular and established place of business.[21] A regular place of business is one that "operates in a 'steady[,] uniform[,] orderly[, and] methodical manner."[22] Sporadic business activities do not create venue.[23] This prong also requires that the defendant has the "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"[24]

Finally, the third requirement—the place of business is that of the defendant—requires that the location be attributable to the defendant.[25] *Cray* set forth a list of non-exclusive factors to aid in determining whether a place of business is attributable to a defendant. These include "whether the defendant owns or leases the place, or exercises other attributes of possession or

---

[16] *Id.* at 1362.
[17] *Id.*
[18] *Id.* at 1363 (emphasis in original).
[19] *Id.* at 1362 (internal quotation marks omitted).
[20] *Id.*
[21] *Id.*
[22] *Id.* (alteration in original) (internal quotation marks omitted).
[23] *See Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941).
[24] *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020).
[25] *In re Cray Inc.*, 871 F.3d at 1363.

control over the place," and "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself."[26]

Here, the parties' arguments address the second and third requirement. Dine asserts that it does not have a regular, established place of business in Utah because no Dine employee or agent has a regular, physical presence in Utah.[27] Dine also argues that any business owned in Utah belongs to its subsidiaries and Dine itself does not own any Utah property.

A. Regular and Established Place of Business

In *In re Google LLC,* the Federal Circuit recently clarified patent venue, and both parties claim this new precedent favors their case. In Google's case, the plaintiff brought suit for patent infringement in the Eastern District of Texas.[28] Google denied having a place of business in the Eastern District of Texas despite the presence of several Google Global Cache ("GGC") servers containing Google's data.[29] Google's GGC servers were not hosted within Google owned datacenters owned by Google, but were serviced by third-party contractors within the district.[30] Google argued, and the court agreed, that *Cray*'s second factor—a place of business—generally requires an employee or agent of the defendant to be conducting business at that place.[31] The court also explained that any agency or employee must be a permanent agency and not isolated cases of infringement.[32]

---

[26] *Id.*
[27] *See* Docket No. 116, at 2–3.
[28] *In re Google, LLC*, 949 F.3d at 1340.
[29] *Id.*
[30] *Id.*
[31] *Id.* at 1344.
[32] *Id.* at 1345.

It was undisputed that Google had no employees in the Eastern District of Texas, so the court analyzed whether the third-party service contractors were Google's agents.[33] In doing so, the court listed the elements of agency as "(1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf, and (3) the consent by the [agent] to act."[34] The court reasoned that the third-party contractors were not conducting Google's business because Google had no right of interim control over the provisions of network access.[35] This cut against an agency finding because "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."[36] Ultimately, the court concluded that Google had no employees or agents in the Eastern District of Texas and thus venue was improper.[37]

Here, Dine argues that it does not have any employees or agents in Utah.[38] Dine does admit, however, that its IHOP subsidiaries do have employees in Utah,[39] but as discussed below, the actions of Dine's subsidiaries do not impute to Dine. MFA argues that Dine regularly sends employees and agents to Utah to physically inspect ongoing operations and therefore Dine conducts business in Utah.[40] This argument fails because Dine sending employees or agents to Utah to conduct inspections is not permanent agency but isolated incidents. Further, as Google

---

[33] *Id.*

[34] *Id.* (internal quotation marks omitted) (alterations in original).

[35] *Id.* at 1345.

[36] *Id.* at 1345–46.

[37] *Id.* at 1347.

[38] *See* Docket No. 116, at 4.

[39] *Id.* at 5.

[40] *See* Docket No. 115, at 9–10.

was not in the business of maintaining servers, Dine is not in the business of maintaining kitchens. Indeed, any inspections Dine conducts are ancillary to its business of accelerating profitable growth of its brands through marketing, innovation, and financial discipline.[41] Dine does not maintain employees or agents in Utah and thus venue is improper.

B. Place of Business is the Defendants

Dine's arguments regarding whether it maintains a regular and established place of business in Utah are convoluted and have morphed throughout briefing. Prior to venue discovery, Dine asserted that it "does not own or lease any real property in Utah."[42] Confusingly, in a Declaration in support of the Motion, Dine admits that it "does own property in Utah,"[43] but "indirectly subleases property in Utah through its subsidiaries."[44] MFA seizes on Dine's statements and argues that Dine's admission about owning and leasing property in Utah is sufficient to establish venue.[45] After venue discovery, Dine argues that it does not own any real property in Utah but all property is owned through its wholly owned subsidiary.[46] In response, MFA argues that Dine and its subsidiaries are intertwined and mixed to such an extent that "it cannot disclaim the operations of its subsidiaries."[47]

Although Dine initially made conflicting statements regarding its ownership of Utah property, it clarified its prior statements in a deposition. Dine's deposition witness was asked "Q. So does Dine Brands—it says here it doesn't say anything about indirectly or directly it just

---

[41] *See* Docket No. 66-2, at 4.
[42] *See* Docket No. 32, at 5.
[43] *See* Docket No. 32-1 ¶ 11.
[44] *Id.*
[45] *See* Docket No. 43, at 5.
[46] *See* Docket No. 61, at 1.
[47] *See* Docket No. 65, at 4.

owns property does Dine Brands own any property? A. No subsidiary—indirectly through its subsidiary."[48] From this, it is apparent that Dine's subsidiaries own Utah property, but Dine does not directly own any Utah property.

MFA challenges the testimony of Dine's witness in two ways. First, MFA argues that Dine's declaration in support of the Motion "stated unambiguously that Dine Brands 'does own property in Utah.'"[49] MFA's insistence that Dine's declaration is unambiguous is incorrect because MFA's argument does not fully contemplate the nuances and complexities of Dine's corporate structure. Dine's statement is ambiguous because it does not specify whether Dine directly or indirectly owns the Utah property. This ambiguity is further obscured by Dine's other statements that it does not own Utah property.[50] It is true that Dine's declarant could have more precisely described the nature of any property ownership in Utah, but careless word choice does not negate the fact that Dine's witness later clarified that statement, and MFA has produced no extrinsic evidence to contradict the witness' testimony. MFA's argument—that Dine's declaration unambiguously proves that Dine owns Utah property—is unconvincing because it invites the Court to twist imprecise wording into an erroneous factual finding.

MFA also argues that Dine maintains a regular and established place of business in Utah because it does not maintain a "corporate separateness that might in other circumstances allow it to disclaim the operations of its subsidiaries."[51] In other words, MFA argues that the actions of

---

[48] Docket No. 61, at 1.

[49] *See* Docket No. 65, at 3–4 (quoting Docket No. 32-1, ¶ 11).

[50] *See, e.g.*, Docket No. 32, at 5; Docket No. 61, at 1.

[51] *See* Docket No. 65, at 4.

Dine's subsidiaries are attributable to Dine for venue purposes because Dine and its subsidiaries ignore corporate formalities.[52]

As a general rule, a subsidiary's presence in a venue cannot be imputed to a parent unless the corporation disregards corporate formalities, lacks formal corporate separateness, or the subsidiary is the parent corporation's alter ego.[53] Settled law always presumes that corporations exist as separate entities.[54] Indeed, there must be a "'plus factor,' something beyond the subsidiary's mere presence within the bosom of the corporate family."[55] The party arguing for venue bears the burden of convincing the court that corporate formalities are being ignored and venue should be imputed to a parent company.[56] Courts are typically reluctant to conclude that corporate formalities are being ignored.[57] For example, in *Hargrave v. Fibreboard Corp.* even "100% stock ownership and commonality of officers and directors [were] not alone sufficient to establish alter ego relationship between two corporations."[58]

---

[52] *See id.* at 5 ("Dine Brands intermingles its businesses to such a degree that the operations cannot be separated. And it is appropriate to attribute all of the various corporate entities' operations in Utah to Dine Brands.").

[53] *See, e.g.*, *Symbology Innovations, LLC v. Lego Systems, Inc.*, 282 F. Supp. 3d 916, 932 (E.D. Va. 2017); *Shapiro v. Ford Motor Co.*, 359 F. Supp. 350, 352 (D. Md. 1973); *Galderma Labs. L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017); *T-Jat Sys. 2006 Ltd. V. Expedia, Inc.*, 16-CV-581, 2019 WL 351252 at *4 (D. De. Jan. 29, 2019).

[54] *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1018 (10th Cir. 2011).

[55] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (quoting *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)).

[56] *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

[57] *See Symbology Innovations, LLC*, 282 F. Supp. 3d at 931 ("when separate, but closely related, corporations are involved . . . the rule is similar to that applied for purposes of service of process. So long as a formal separation of the entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other. On the other hand, if the corporations disregard their separateness and act as a single enterprise, they may be treated as one for purposes of venue." (quoting CHARLES A. WRIGHT ET AL., 14D FEDERAL PRACTICE AND PROCEDURE § 3823 & n.24–26 (footnotes omitted))).

[58] 710 F.2d 1154, 1160 (5th Cir. 1983).

Whether a corporation observes corporate formalities is a fact-specific inquiry that depends on a myriad of factors.[59] *Symbology Innovations* sets forth a list of these factors, which include whether the parent company arranges the subsidiary's financing, whether the companies keep separate tax returns, financial statements, and books, whether officers and directors are the same, and whether the parent exerts control over the subsidiary's daily activities.[60] Courts also look at whether "corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes."[61]

Here, MFA argues that these factors weigh in favor of its assertion that Dine and its subsidiaries are intertwined such that the subsidiaries' Utah business may be imputed to Dine.[62] MFA argues that the officers and directors of Dine and its subsidiaries are nearly the same.[63] Specifically, MFA points out that Dine's CEO Stephen Joyce, CFO Thomas Song, and General Counsel Bryan Adel, are also listed as management personnel for IHOP Leasing LLC, a Dine subsidiary which owns and leases property in Utah. Notably, Dine's deposition witness stated that IHOP Leasing LLC's management is paid by Dine and not the subsidiary.[64]

Dine argues that it and the IHOP subsidiaries' officers or directors do not overlap in any meaningful way.[65] Specifically, Dine asserts that although IHOP's president and Applebee's[66]

---

[59] *SNI Sols., Inc.*, 2019 WL 3306215, *2–3.

[60] *Symbology Innovations, LLC*, 282 F. Supp. 3d at 932; *Graco, Inc. v. Kremlin, Inc.*, 558 F. Supp. 188, 191 (N.D. Ill. 1982).

[61] *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 643 (5th Cir. 1991).

[62] *See* Docket No. 65, at 10.

[63] *See id.* at 12.

[64] *See* Docket No. 69, at 13.

[65] *See* Docket No. 61, at 5.

[66] Dine is also the parent company to Applebee's.

president "are members of Dine's executive committee, this *de minimis* overlap is irrelevant to the venue inquiry as it does not indicate the day-to-day control of the brand subsidiaries."[67] Dine also argues that MFA's evidence showing overlap between Dine's management and IHOP Leasing LLC is not probative because it is unclear how "those executives can or do exercise control over the subsidiaries."[68]

Dine's argument—that it maintains a corporate separateness between it and its subsidiaries—is weakened by the fact that it shares at least three officers with IHOP Leasing LLC's management. Its argument is further weakened by the fact that Dine's officers are also management of Dine's other subsidiaries and that Dine, not the subsidiaries, pay these executives. Therefore, the Court finds that Dine's management structure is intertwined with its subsidiaries. Dine, however, correctly notes that the extent of control the overlapping executives exert over the subsidiaries is unclear. Thus, this factor weighs in MFA's favor but not as heavily as MFA desires.

MFA next argues that Dine does not observe corporate separateness because it exerts control over the daily activities of its subsidiaries. MFA contends that Dine controls its subsidiaries because all subsidiaries report to Dine, it can veto the subsidiaries' decisions, it has no contractual restrictions governing the level of corporate control, and some Dine employees perform services on the subsidiaries' behalf.[69] MFA also argues that Dine may send its employees to certain IHOPs to ensure quality control and to evaluate prospective franchise locations.[70] Dine, however, asserts that its "relationship with its IHOP subsidiaries is just the

---

[67] *See* Docket No. 61, at 6.

[68] *Id.*

[69] *See* Docket No. 65, at 14–15.

[70] *See id.* at 9.

general subsidiary type relationship."[71] Dine further asserts that it "does not involve itself in local or brand-level decisions, such as advertising or menu design."[72]

MFA's arguments regarding Dine's control over the IHOP subsidiaries are purely speculative, and without more, inadequate to demonstrate that Dine controls its subsidiaries to such an extent that corporate separateness is dissolved. For example, MFA asserts that Dine may "veto decisions of subsidiaries."[73] MFA, however, does not give any examples of when this actually occurred. Further, MFA makes no argument about how Dine's actions as a parent corporation are outside the normal parent-subsidiary corporate structure. For these reasons, the Court finds that Dine does not exert excess control over the IHOP subsidiaries, and this factor favors Dine.

MFA also argues that Dine does not maintain corporate separateness because it and its subsidiaries keep combined financial statements and tax returns.[74] MFA supports this assertion by referencing Dine's SEC filings, which state that Dine is filing on behalf of Dine and its subsidiaries.[75] Courts have typically concluded that this use of SEC filings is insufficient evidence of corporate separateness because such filings are insufficiently probative of the degree of control the parent exerts over the subsidiary.[76]

---

[71] *See* Docket No. 61, at 4 (internal quotation marks omitted).

[72] *Id.*

[73] *See* Docket No. 69, at 14.

[74] *See id.* at 15.; Docket No. 115, at 3–5.

[75] *See id.*

[76] *See, e.g., Lowell Staats Mining Co., v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1264 (10th Cir. 1989); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 650 (8th Cir. 2003); *Velez v. Portfolio Recovery Assoc., Inc.*, 881 F. Supp. 2d 1075, 1085 (E.D. Mo. 2012); *Herman v. YellowPages.com, LLC*, 780 F. Supp. 2d 1028, 1033–34 (S.D. Cal. 2011).

MFA further argues that Dine disregards corporate separateness because it keeps combined financial statements as part of securitization and to meet a contractual obligation.[77] These examples are limited to specific instances where consolidated financial statements satisfy Dine's obligations to third parties and are not necessarily probative of Dine's failure to maintain corporate separateness. In contrast to MFA's assertions, Dine claims that each of its legal entities has its own general ledger and transactions between entities are meticulously recorded.[78] For example, Dine records revenues separately for each legal entity, it allocates taxes, expenses, rent, and insurance separately, and allocates corporate administrative costs to each entity proportionally.[79] Dine admits that it does so to maintain an arm's-length transaction, and to comply with Generally Accepted Accounting Principles.[80] Dine has demonstrated that it maintains financial corporate separateness and thus this factor favors Dine.[81]

Finally, MFA argues that Dine does not maintain corporate separateness because it arranges financing for its subsidiaries.[82] Specifically, MFA alleges that financing for certain Dine subsidiaries is obtained by pledging Dine's "'domestic revenue-generating assets and [Dine's]

---

[77] *See* Docket No. 115, at 5.

[78] *See* Docket No. 116, at 8.

[79] *Id.*

[80] *Id.* at 8–9.

[81] *See, e.g., Cannon Mfg. v. Cudahy Co.*, 267 U.S. 333, 335 (1925) (concluding that corporation and subsidiary maintained separateness because separate books were kept and transactions between the two companies were represented as though they were separate corporations); *Symbology Innovations, LLC*, 282 F. Supp. 3d at 932 (concluding that corporation and subsidiary maintained separateness because "[t]hey keep separate general ledgers, prepare distinct financial reports, and have separate assets.").

[82] *See* Docket No. 65, at 16.

domestic intellectual property' as guarantees for the financing."[83] Dine makes no argument disputing MFA's characterization of its subsidiaries' financing. This factor favors MFA.

Two factors—a common management structure and Dine arranging its subsidiaries' financing—weigh in MFA's favor. Two factors—Dine does not exercise excessive control over its subsidiaries and financial separateness—weigh in Dine's favor. The two factors favoring MFA are typical in most parent-subsidiary relationships, and without a "plus factor" those factors alone are insufficient. In other words, it is unsurprising that Dine has some management overlap and helps arrange its subsidiaries' financing, as those facts are true for nearly every large corporation. The fact that Dine does not excessively control its subsidiaries' business dealings, and that Dine maintain financial separateness is strong support for finding that Dine and the IHOP entities are distinct corporate entities. For these reasons, the Court concludes that venue is improper in Utah.

I. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 32) is GRANTED.

DATED April 7, 2020

BY THE COURT:

Ted Stewart
United States District Judge

---

[83] *See id.* (quoting Docket No. 66-2, at 54).